IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOY CREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NUMBER: |
| v. | ) | |
| | ) | 3:06-cv-00047-MEF-VPM |
| DOLGENCORP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DOLGENCORP, INC.'S BRIEF IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Christopher W. Deering
Ryan M. Aday
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
One Federal Place
1819 5th Avenue North, Suite 1000
Birmingham, Alabama 35203
Phone: (205) 328-1900
Facsimile: (205) 328-6000

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 3

II.   STATEMENT OF UNDISPUTED FACTS ................................................................. 3

III.  ARGUMENT ................................................................................................................. 8

   A.    Summary Judgment Standard: ........................................................................... 8

   B.    Crews cannot sustain a claim of discriminatory discharge under the AADEA. 9

      1.    Crews cannot establish a *prima facie* case ........................................................ 9

      2.    Even if Crews could satisfy a *prima facie* case of discriminatory discharge
          under the AADEA, Crews has no evidence which would tend to show
          that Dolgencorp's legitimate, nondiscriminatory reasons for her purported
          "termination" were pretext for unlawful age discrimination ..................... 10

          a.    Crews' job performance was unsatisfactory .................................... 10

          b.    Crews' allegation that Ms. Hall wanted "cute and perky"
              employees is neither direct nor circumstantial evidence of age
              discrimination ..................................................................................... 12

   C.    Crews cannot sustain a claim of discriminatory demotion under the AADEA
      with respect to her purported "demotion" from Assistant Store Manager to
      Lead Clerk because she was never originally placed in the Assistant Store
      Manager position ............................................................................................. 15

   D.    Likewise, Crews cannot sustain a claim of discriminatory demotion from the
      Lead Clerk Position to the Clerk position. ....................................................... 16

      1.    Crews cannot establish a *prima facie* case because she cannot show that she
          was qualified for the Lead Clerk position. ..................................................... 16

      2.    Even if Crews could establish a *prima facie* case, Crews has no evidence to
          show that Dolgencorp's legitimate, nondiscriminatory reasons for her
          demotion are pretext for unlawful age discrimination. ............................... 17

   E.    Crews cannot sustain her alleged "off the clock" FLSA claim. .......................... 18

IV.  CONCLUSION ............................................................................................................. 21

## I.    INTRODUCTION

On December 20, 2005, Plaintiff Joy Crews ("Crews"), a former employee of Defendant, Dolgencorp, Inc., ("Defendant" or "Dolgencorp"), filed this lawsuit against Dolgencorp alleging discriminatory discharge and demotion under the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code 1975, § 25-1-20 *et seq.*, as well as a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The evidence and arguments presented herein demonstrate that Crews' work performance was substandard, that she was demoted from the Lead Clerk position to the Clerk position as a result of her substandard performance, that she was never placed in the Assistant Manager position, and that she voluntarily resigned her employment with Dolgencorp for reasons unrelated to age discrimination. Additionally, Crews cannot meet her burden of demonstrating by "definite and certain evidence" that she was entitled to any unpaid overtime. As a result, Dolgencorp is entitled to summary judgment with respect to all claims asserted in Crews' Complaint.

## II.    STATEMENT OF UNDISPUTED FACTS

1.    On January 17, 2003, at the age of 40, Crews was hired as a part-time store clerk at Store No. 4800 located in Bowdon, Georgia. *See* Dolgencorp Employment Form, Exhibit "1" of Dolgencorp's Evidentiary Submission; Crews Depo. at 10, l. 1-4, Exhibit "2" of Dolgencorp's Evidentiary Submission.

2.    On May 10, 2003, Crews received a promotion from Clerk to Lead Clerk (also called third-key) at Store No. 4800. *See* Crews' Depo. at 20, l. 17-23; 21, l. 2-12.

3.    Crews did not receive an increase in pay rate in connection with her promotion from Clerk to Lead Clerk. *See* Declaration of Norman Kennessey ("Mr.

Kennessey") ("Kennessey Declaration") at ¶ 5, Exhibit "3" of Dolgencorp's Evidentiary Submission.

4.    Crews received a written progressive counseling from Store No. 4800 Store Manager, Vivian Keith ("Ms. Keith") on October 19, 2004, because Crews failed to properly make required bank deposits.  *See* Progressive Counseling Record dated October 19, 2004, Exhibit "4" of Dolgencorp's Evidentiary Submission; Crews' Depo. at 37, l. 19-23; 38, l. 1-11; exhibit "4" of Crews' Depo.

5.    Crews received a second written progressive counseling during her time at Store No. 4800 on April 4, 2005, because Crews was "$60.00 short in the safe, $15.00 short in cash drawer."  Additionally, the written counseling instructed Crews to "pay attention and follow instructions", to "become a team player", and to "stop being in a rush to get out of the store."  *See* Progressive Counseling Record dated April 4, 2005, Exhibit "5" of Dolgencorp's Evidentiary Submission; Crews' Depo. at 65, l. 2-7; exhibit "4" of Crews' Depo.

6.    On April 30, 2005, Mr. Kennessey, the District Manager, approved Crews' request to transfer from Store No. 4800 to a new store, Store No. 5842, located in Ranburne, Alabama.  *See* Crews' Depo. at 66, l. 17-22; Kennessey Declaration at ¶ 6.

7.    At the time Mr. Kennessey approved Crews' request to transfer from Store No. 4800 to Store No. 5842, he was unaware that Crews had received the two Progressive Counseling Records of October 19, 2004 and April 4, 2005 while she was working as Lead Clerk at Store No. 4800.  *See* Kennessey Declaration at ¶ 7.

8.    Gordon Lee Gilliam was hired by Mr. Kennessey as an Assistant Manager with the idea that he would work at various stores within the district, as needed,

including at Store No. 5842.  *See* Kennessey Declaration at ¶ 9.

9.      Crews was never formally promoted to the Assistant Manager position.  *See* Crews' Depo. at 97, l. 12-20; Kennessey Declaration at ¶ 8.

10.     While at Store No. 5842, Lynda Hall ("Ms. Hall"), the Store Manager, verbally counseled Crews on her substandard job performance.  *See* Ms. Hall's notes, Exhibit "6" of Dolgencorp's Evidentiary Submission; Crews Depo. at 28, l. 4-10.

11.     Ms. Hall counseled Crews on the "safe fund" procedure.[1]  *See id.*"

12.     Ms. Hall counseled Crews on "drawer counting" procedure.[2]  *See id.*

13.     Ms. Hall counseled Crews on her failure to properly make bank deposits.  *See id.*; Crews' Depo. at 79, l. 16-20.

14.     Ms. Hall counseled Crews on the "cash pick-up" procedure.[3]  *See id.*

15.     Ms. Hall counseled Crews as to how to properly "recover" the store.[4]  *See id.*

16.     Ms. Hall counseled Crews as to proper "face fronting" of merchandise in the store.[5]  *See* Crews' Depo. at 79, l. 21-23; 80, l. 1-2, l. 6-13.

---

[1]  The "safe fund" is the money located in the store's safe that is used exclusively for the purpose of making change when a customer pays with a large bill and for replenishing the cash register(s) with cash or needed denominations of such cash throughout a given work day.  *See* Kennessey Declaration at ¶ 17.

[2]  "Drawer counting" is the process of counting a cash register drawer to determine if it has the proper amount of money in it.  *See* Kennessey Declaration at ¶ 18.

[3]  A "pick up" is a cash transfer that is performed regularly to remove excess cash from the register drawers.  *See* Kennessey Declaration at ¶ 19.

[4]  "Recovery" is the process of cleaning the store and placing misplaced merchandise back in its assigned area of the store.  *See* Kennessey Declaration at ¶ 20.

[5]  "Face fronting" is the process of stocking the store shelves with merchandise and arranging the merchandise so that the product label or the product itself is pulled to the front of the shelf for easy viewing and access by the customer.  *See* Kennessey Declaration at ¶ 21.

17.    Ms. Hall counseled Crews regarding her handling of an incident where another employee used profanity in front of customers. *See* Crews' Depo. at 82, l. 3-12.

18.    On June 3, 2005, Mr. Kennessey and Ms. Hall met with Crews, and told her that due to her failure to satisfactorily perform the duties of the Lead Clerk position, that the decision was made not to promote Crews to the Assistant Manager position. *See* Crews' Depo. at 77, l. 3-11; Kennessey Declaration at ¶ 10.

19.    Additionally, during the June 3, 2005, meeting, Crews was informed that she would no longer be part of the management team of Store No. 5842, thereby demoting her from the Lead Clerk position to the Clerk position. *See* Crews' Depo. at 77, l. 3-11; Kennessey Declaration at ¶ 11. Mr. Kennessey concluded the meeting by telling Crews that the possibility of promoting her in the future remained open if her job performance improved. *See* Crews' Depo. at 85, l. 9-23; 86, l. 1-3; Kennessey Declaration at ¶ 12.

20.    Crews did not receive a reduction in her pay rate in connection with her demotion from Lead Clerk to Clerk. *See* Kennessey Declaration at ¶ 14.

21.    On July 15, 2005, Crews resigned her employment with Dolgencorp. *See* Crews' Depo. at 72, l. 3-7.

22.    Crews took vacation days from July 9, 2005, until her resignation on July 15, 2005. *See* Crews Depo. at 73, l. 13-22.

23.    Crews resigned her employment because her hours were reduced (*see* Crews' Depo. at 72, l. 13-17.) and because she "didn't like working with liars" (*see* Crews' Depo. at 74, l. 18-22).

24.    Crews never complained to anyone at Dolgencorp about age

discrimination prior to her resignation.  *See* Crews' Depo. at 53, l. 6-12; 54, l. 7-17.

25.    Crews alleges that Ms. Hall said that she wanted "cute and perky" employees.  *See* Crews' Depo. at  87, l. 8-12.

26.    Ms. Hall never said she wanted young employees.  *See* Crews' Depo. at 88, l. 19-21.

27.    Ms. Hall never said she wanted to "get rid of the old employees."  *See id.* at 88, l. 22-23; 89, l. 1-4.

28.    Both Mr. Kennessey and Ms. Hall are older than Crews.  *See* Crews' Depo. at 91, l. 8-23; 92, l. 1-3.

29.    Crews acknowledged that she understood that it was against Dolgencorp policy to work "off the clock."  *See* Crews Depo. at 38, l. 12-23; 39, l. 1-19; 45; l. 11-23; exhibit "2" of Crews' Depo.; Dolgencorp Acknowledgement Document, Exhibit "7" of Dolgencorp's  Evidentiary Submission.

30.    Crews acknowledged that it was her responsibility to contact Dolgencorp's Employee Response Center if she had not been paid for all hours worked. *See* Exhibit "7."

31.    It was Crews' responsibility to clock in and out of work.  *See* Crews Depo. at 52, l. 7-9.

32.    Crews was never forced to work over 40 hours in a given workweek.  *See* Crews' Depo. at 106, l. 6-11.

33.    Crews never complained to anyone about having to work "off the clock." *See* Crews' Depo. at 108, l. 12-16.

34.    Crews never contacted Dolgencorp's Employee Response Center

regarding any nonpayment of wages.  *See* Crews Depo. at 54, l. 7-17.

35.    Crews "guesses" that she worked eight hours of overtime every other week while employed at Store No. 4800 only.  *See* Crews' Depo. at 116, l. 15-23; 117, l. 1-2; 120, l. 15-23; 121, l. 1-3.

## III.    ARGUMENT

### A.    Summary Judgment Standard:

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Mere allegations in a pleading are not enough to create a genuine issue of material fact as against a showing of evidence contrary to the allegations.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ("mere existence of *some* alleged factual dispute. . . will not defeat an otherwise properly supported motion for summary judgment . . . ") (emphasis in the original). Once the moving party has made a showing that there is no genuine issue of material fact, the non-moving party must then present specific facts creating such an issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87); *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) ("summary judgment is not a disfavored procedural shortcut but an integral part of the Federal Rules").  While resolution of summary judgment motions in employment discrimination matters often involve "fact-intensive issues", the Eleventh Circuit notes that the granting of such motions, when appropriate, is proper and specifically useful to "'police the baseline'" for employment-related claims.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999); (*see also Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 n.8 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000)).

**B.    Crews cannot sustain a claim of discriminatory discharge under the AADEA.**

**1.    Crews cannot establish a *prima facie* case.**

In her Complaint, Crews alleges that she was unlawfully terminated on the basis of her age.  To establish a *prima facie* case of discriminatory termination under the AADEA[6], Crews must show:  (1) that she was within the statutorily protected age group; (2) that she was discharged; (3) that her employer specifically sought to replace her with a younger person, and (4) that she was replaced with a younger person outside the protected age group.  *See Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495, n.2 (11th Cir. 1987); *Pace v. Southern Ry. System*, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983). Based on the evidence, Crews cannot satisfy either elements (2) or (3) of the *prima facie* case, and as a result, her termination claim fails as a matter of law.

It is undisputed based on Crews' own testimony that she voluntarily resigned her employment with Dolgencorp, for reasons unrelated to age discrimination.  Specifically, Crews testified during her deposition that she quit because her hours were reduced (*see* Crews' Depo. at 72, l. 13-17) and because she "didn't like working with liars" (*see* Crews' Depo. at 74, l. 18-22).   Clearly, neither of these reasons bears any relation to any perceived age discrimination.  This fact is bolstered by Crews' admission that she never

---

[6]   When the Alabama Legislature enacted the Alabama Age Act, it incorporated the defenses applicable to the claims under the federal ADEA:

> Any employment practice authorized by the federal Age Discrimination in Employment Act shall also be authorized by this article and the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article.

§ 25-1-29, Ala. Code 1975.

complained to anyone at Dolgencorp about age discrimination. *See* Crews' Depo. at 53, l. 6-12; 54, l. 7-17. Therefore, it is apparent that Crews voluntarily chose to resign her employment with Dolgencorp for reasons unrelated to any perceived age discrimination, and as a result, Crews cannot satisfy the second element of the required *prima facie* case. Accordingly, her termination claim must fail as a matter of law.

Likewise, Crews has no evidence which would suggest that Dolgencorp specifically sought to replace her with a younger employee. As discussed in more detail below, Crews has alleged that Ms. Hall said that she wanted "cute and perky" employees, an allegation which Ms. Hall denies. However, even when taking this allegation as true, this single comment cannot possibly constitute evidence of any intent to discriminate. Therefore, Crews cannot satisfy the third *prima facie* element, and accordingly, her claim fails for this reason, among others.

> **2.    Even if Crews could satisfy a *prima facie* case of discriminatory discharge under the AADEA, Crews has no evidence which would tend to show that Dolgencorp's legitimate, nondiscriminatory reasons for her purported "termination" were pretext for unlawful age discrimination.**

> **a.    Crews' job performance was unsatisfactory.**

Even if Crews could satisfy a *prima facie* case of discriminatory discharge under the AADEA, Crews possesses no evidence that the reasons for her purported "termination" are a pretext for unlawful age discrimination. As explained previously, Crews voluntarily resigned her employment with Dolgencorp, for reasons, by her own admission, unrelated to age discrimination. Additionally, as mentioned previously, Crews has no evidence which would tend to show that Dolgencorp sought to replace her with a younger employee. However, even if the Court should determine that Crews can satisfy a *prima*

*facie* case of discriminatory termination, Dolgencorp possesses several legitimate, nondiscriminatory reasons for her purported "termination."

Crews' job performance was unsatisfactory, and did not improve despite Ms. Keith's and Ms. Hall's best efforts to help her. Crews received a written progressive counseling from Ms. Keith on October 19, 2004, because Crews failed to properly make bank deposits. *See* Exhibit "4"; Crews' Depo. at 37, l. 19-23; 38, l. 1-11. Less than six months later, Crews received a second written progressive counseling from Ms. Keith because Crews was "$60.00 short in the safe, $15.00 short in cash drawer." *See* Exhibit "5". Additionally, the written counseling instructed Crews to "pay attention and follow instructions", to "become a team player", and to "stop being in a rush to get out of the store." *See id.*; Crews' Depo. at 65, l. 2-7.

Crews' job performance did not improve after her transfer to Store No. 5842. Like Ms. Keith, Ms. Hall had problems with Crews' job performance and counseled her on numerous occasions. *See* Ms. Hall's Notes at Exhibit "6". While at Store No. 5842, Ms. Hall verbally counseled Crews about (1) the "safe fund" procedure (*see* Exhibit "6"); (2) the "drawer counting" procedure (*see* Exhibit "6"); (3) properly making bank deposits (*see* Exhibit "6"; Crews' Depo. at 79, l. 16-20); (4) the "cash pick-up" procedure (*see* Exhibit "6"); (5) properly "recovering" the store (*see* Exhibit "6"; Crews' Depo. at 79, l. 23-23; 80, l. 1-13; (6) proper "face fronting" procedure (*see* Exhibit "6"); and (7) her handling of an incident where another employee was using profanity in front of customers (*see* Crews' Depo. at 82, l. 3-12). Accordingly, even if Crews did not voluntarily resign her employment, Dolgencorp had more than ample justification for terminating her employment, and as will be discussed *infra*, demoting her from the Lead

Clerk position to the Clerk position.

>    **b.    Crews' allegation that Ms. Hall wanted "cute and perky" employees is neither direct nor circumstantial evidence of age discrimination.**

In her deposition, Crews claims that Ms. Hall wanted "cute and perky" employees, and will likely argue that this comment is somehow evidence of discriminatory animus. Ms. Hall denies making this comment, but assuming for summary judgment purposes that she did, the comment is not age-related and cannot be construed as evidence of any intent to discriminate on the part of Ms. Hall. This comment cannot constitute "direct evidence" of age discrimination as defined in this circuit. In *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989), the Eleventh Circuit held that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age . . . constitute direct evidence of discrimination."

Crews' lack of direct evidence of age discrimination is illustrated in *Burrell v. Bd. of Trustees of Georgia Military College*, 125 F.3d 1390 (11th Cir. 1997). In *Burrell*, the Eleventh Circuit held that the statement of a decision-maker that he planned to hire a male because the employer had "too many women" in similar positions was not direct evidence of sex discrimination in the subsequent decision to fire the female to whom the statement was made. Clearly, if the comment in *Burrell* does not constitute direct evidence of gender discrimination, it is impossible that Ms. Hall alleged statement can constitute direct evidence of age discrimination.

In *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515 (11th Cir. 1990), the plaintiff claimed discriminatory demotion on the basis of age. Testimony existed that the decision-maker told another employee that he intended to transfer the plaintiff to a

lower-paying job and "that since she was old enough to retire, she probably would before she would take the transfer." *Id.* at 1523. The court held that this remark was not sufficient to overcome the legitimate, nondiscriminatory reason articulated by defendant for her demotion.

In *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987), the comment "you would have to take another physical examination at your age, I don't believe you would pass it" was held "at most" to evidence the decision-maker's opinion as to the plaintiff's physical condition, not any intent to discriminate.

Just as Ms. Hall's alleged statements cannot constitute "direct evidence" of age discrimination, neither can the statements constitute "circumstantial evidence" of age discrimination, and therefore, Crews cannot survive summary judgment.

Ms. Hall's alleged statement is not indicative of an intent to discriminate, but rather on its face portrays a desire to have attractive and outgoing employees, regardless of age. In *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), the Seventh Circuit held that the plaintiff's supervisor's alleged statements that the plaintiff was not promoted because she was not "perky" and did not have "bounce" in her step were insufficient evidence of discrimination, and the district court's order granting the defendant summary judgment was affirmed. The Seventh Circuit reasoned that the alleged comments had no correlation to the plaintiff's sex or age. Likewise, Ms. Hall's alleged "cute and perky" comment bears no relation to Crews' age. This conclusion is bolstered by the fact that Ms. Hall is older than Crews. *See* Crews Depo. at 91, l. 8-23; 92, l. 1-3. Accordingly, this one alleged comment cannot be used by Crews to survive summary judgment.

Clearly, based on case law, Ms. Hall's alleged "cute and perky" comment is innocuous and cannot be construed as evidence of intentional discrimination. It is critical to note, however, that Ms. Hall was not the ultimate decision-maker with respect to any term, condition, or privilege of Crews' employment with Dolgencorp. Mr. Kennessey, not Ms. Hall, had the authority and actually made the decision to approve Crews' request to transfer to Store No. 5842, and to re-classify Crews from Lead Clerk to Clerk. As explained in detail *supra*, Crews voluntarily resigned her employment; however, if Crews was to be terminated, Mr. Kennessey, not Ms. Hall, likely would have made that ultimate decision, *see* Kennessey Declaration at ¶ 16, which belies any claim that she was discriminated against on the basis of her age. *See Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (holding that it is permissible for Courts to draw an inference of non-discrimination when the alleged discriminator was the same person who hired the plaintiff only a short time earlier) (citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995)("an individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class").

The United States Supreme Court in *Price Waterhouse v. Hopkins*, 109 S.Ct. 1775, 1791 (1989) made clear that "stray remarks" alone are insufficient to form the basis for a Title VII claim. Likewise, stray remarks cannot form the basis of an age discrimination claim. Ms. Hall's single, isolated comment, even if it was age related, constitutes a "stray remark" because (1) it is one, single, isolated comment; and (2) Ms. Hall was not a decision-maker with respect to any term, condition, or privilege of Crews' employment. *See Price Waterhouse*, 109 S.Ct. 1775. Accordingly, Ms. Hall's alleged comment has no probative value, and therefore, cannot be used by Crews to survive summary judgment.

    **C.**    **Crews cannot sustain a claim of discriminatory demotion under the AADEA with respect to her purported "demotion" from Assistant Store Manager to Lead Clerk because she was never originally placed in the Assistant Store Manager position.**

Crews appears to claim that she was discriminatorily demoted from the Assistant Store Manager position at Store No. 5842 to the Lead Clerk position. To establish a *prima facie* case of discriminatory demotion on the basis of her age, Crews must establish the following: (1) that she was a member of the protected age group; (2) that she was subjected to an adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Because Crews can satisfy neither the second nor fourth *prima facie* elements, her discriminatory demotion claim fails as a matter of law.

Crews fails to make a *prima facie* showing here because it is undisputed that Crews never served as an Assistant Store Manager during her employment at Dolgencorp, thereby eliminating the possibility that she was demoted from that position. *See* Crews' Depo. at 97, l. 12-16; Kennessey Declaration at ¶ 8. It was impossible for Crews to have suffered an adverse action because she never held the Assistant Store Manager position, and therefore her claim fails. Additionally, Crews cannot show that she was qualified for the Assistant Store Manager position. Furthermore, Crews did not receive any reduction in her hourly pay rate. As discussed in detail *supra*, Crews' poor job performance as a Lead Clerk prevented her from being promoted to Assistant Store Manager. As a result, based on the undisputed evidence, Crews cannot satisfy a *prima facie* case of discriminatory demotion, and therefore Dolgencorp is entitled to summary judgment on this claim.

**D.    Likewise, Crews cannot sustain a claim of discriminatory demotion from the Lead Clerk Position to the Clerk position.**

**1.    Crews cannot establish a *prima facie* case because she cannot show that she was qualified for the Lead Clerk position.**

Just as Crews cannot sustain a claim for her purported "demotion" from the Assistant Manager position to the Lead Clerk position, Crews cannot sustain a claim for an alleged demotion from Lead Clerk to Clerk. Again, to establish a *prima facie* case of discriminatory demotion on the basis of age, Crews must establish the following: (1) that she was a member of the protected age group; (2) that she was subjected to an adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Crews has failed to present any evidence that she was qualified for the Lead Clerk position, and as a result, she cannot satisfy element (4) of the required *prima facie* case.

As discussed in more detail above, Crews, upon being promoted to the Lead Clerk position, struggled over and over again with her job performance. Crews received two written counselings while serving as the Lead Clerk at Store No. 4800, both of which were unknown to Mr. Kennessey when he agreed to transfer Crews to Store No. 5842. *See* Kennessey Declaration at ¶ 7. Additionally, Crews received numerous verbal counselings from Ms. Hall while serving as Lead Clerk at Store No. 5842. *See* Exhibits "4", "5" and "6." Crews' substandard job performance resulted in her "demotion" from Lead Clerk to Clerk. *See* Kennessey Declaration at ¶ 13. As a result, it is impossible for Crews to prove that she was qualified for the Lead Clerk position at Store No. 5842, and

therefore, cannot satisfy the required *prima facie* case.

> **2.    Even if Crews could establish a *prima facie* case, Crews has no evidence to show that Dolgencorp's legitimate, nondiscriminatory reasons for her demotion are pretext for unlawful age discrimination.**

Even if Crews could muster evidence to somehow show that she was in fact qualified for the Lead Clerk position, Crews has no evidence to show that Dolgencorp's legitimate, nondiscriminatory reasons for her demotion are a pretext for age discrimination.  Crews' well-documented substandard job performance resulted in her re-classification from the Lead Clerk position to the Clerk position.  After working as a Lead Clerk, Crews received two written counselings from Ms. Keith at Store No. 4800, and several verbal counselings from Ms. Hall at Store No. 5842.  *See* Exhibits "4", "5" and "6".

Dolgencorp's evidence of its legitimate, nondiscriminatory reasons for Crews' "demotion," requires Crews to demonstrate that Dolgencorp's legitimate, nondiscriminatory reasons were a pretext for unlawful discrimination.  As discussed above with respect to Crews' termination claim (*see* III(B)(2)) Crews cannot meet this burden.  While Crews will likely argue that Ms. Hall's alleged "cute and perky" comment constitutes evidence of discriminatory intent, it is clear that this comment cannot be considered evidence of age discrimination.  *See Burrell*, 125 F.3d 1390 (holding that statement of a decision-maker that he planned to hire a male because the employer had "too many women" in similar positions was not direct evidence of gender discrimination); *Baker,* 903 F.2d 1515 (holding that decision-maker's comment that the employee he intended to transfer to a lower paying position would likely retire because "since she was old enough to retire, she probably would before taking the transfer" was

not sufficient evidence to overcome employer's legitimate, nondiscriminatory reason for the transfer); *Barnes*, 814 F.2d 607 (holding that decision-maker's comment "you would have to take another physical examination at your age, I don't believe you would pass it" did not evidence any intent to discriminate on the basis of age); *Larimer*, 137 F.3d 497 (holding that the plaintiff's supervisor's alleged statements that the plaintiff was not promoted because she was not "perky" and did not have "bounce" in her step were not evidence of discrimination and summary judgment was affirmed).

Additionally, as discussed previously (*see* III(B)(2)), Ms. Hall's alleged single, isolated "cute and perky" comment is nothing more than a "stray remark" pursuant to the holding in *Price Waterhouse*, 109 S. Ct. 1775. Accordingly, Crews has no evidence which would tend to show that Dolgencorp's legitimate, nondiscriminatory reasons for her demotion were pretext for discrimination, and summary judgment should be granted on this claim, as well.

### E.    Crews cannot sustain her alleged "off the clock" FLSA claim.

An employee bringing suit for unpaid overtime compensation bears the burden to prove, with definite and certain evidence, that she performed work for which she was not properly compensated. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980) (citing *Anderson*, 328 U.S. at 686-87).

Crews cannot succeed on her FLSA "off the clock" claim because she cannot present any evidence, or even articulate on what days she allegedly worked overtime without payment, how much overtime she worked without payment, or how much overtime she is allegedly owed. When specifically questioned as to the number of hours

of overtime that she allegedly was not paid for, Crews could only "guess" as to the

number of hours that she was allegedly entitled to. The colloquy was as follows:

> Q.    Sure. All right. What is your best judgment as to the
> number of overtime hours on average per month at that Bowdon store
> that you should have been paid that you were not paid.
>
> A.    If I had to guess, and this is just a guess, eight hours every
> other week. And that's a guess, I mean, --I don't know.

(Crews' Depo. at 116, l. 15-23).

The fact that Crews can only "guess" as to the amount of overtime she is

allegedly owed clearly shows that she cannot meet her burden of establishing her

overtime entitlement with "definite and certain evidence." This point is further

illustrated in *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428 (5th Cir. 2005). In

*Harvill*, the plaintiff, an office manager for a newspaper, filed suit under the FLSA

alleging that she was not compensated for unpaid overtime. *See id.* at 432, 441. Similar

to Crews in this case, the plaintiff could not determine how much overtime she was

allegedly owed. *See id.* at 441-42. The district court granted the employer's motion for

summary judgment, finding that the plaintiff's conclusory testimony that she worked

overtime without being paid failed to raise an issue of material fact for trial. *See id.* at

440-41. On appeal, the plaintiff raised for the first time that she was entitled to exactly

210 hours of overtime pay. *See id.* at 440. In affirming entry of summary judgment, the

court noted:

> In the district court, [Plaintiff's] argument against summary judgment on
> her FLSA claim consisted of her unsubstantiated assertions that
> [plaintiff's immediate supervisor] required her to turn in false time sheets,
> and that [defendant] 'clearly suffered or permitted' her to work overtime.
> She contended that it was up to the jury to decide who was telling the
> truth. She offered no factual allegations *at all* to substantiate her claim,
> and she presented *no* evidence of the amount or the extent of hours she

worked without compensation.

*Id.* at 441 (emphasis in original).

The factual situation presented in *Harvill* is nearly identical to the situation currently before this Court. Crews can only "guess" as to the amount or extent of the hours she allegedly worked without compensation, and she has presented no evidence whatsoever in support of her "guesses." Additionally, it is important to note that Crews testified in her deposition that she was never forced to work over 40 hours in a given workweek (*see* Crews' Depo. at 106, l. 6-11), and that she never complained to anyone about having to work "off the clock." (*see* Crews' Depo. at 108, l. 12-16).

Further bolstering Crews' lack of any evidence of her alleged "off the clock" work is (1) her acknowledgement that she understood that it was against Dolgencorp policy to work "off the clock" (*see* Crews Depo. at 38, l. 12-23; 39, l. 1-19; 45; l. 11-23; Dolgencorp Acknowledgement Document, Exhibit "7"), (2) her acknowledgment that it was her responsibility to contact Dolgencorp's Employee Response Center if she had not been paid for all hours worked (*see* Exhibit "7"), and (3) the fact that Crews never contacted Dolgencorp's Employee Response Center (a toll-free hotline) regarding any nonpayment of wages (*see* Crews Depo. at 54, l. 7-17). Accordingly, it is impossible for Crews to show by "definite and certain evidence" that she is entitled to any unpaid overtime, and as a result, Dolgencorp is entitled to summary judgment. *See, e.g., Noorda v. Chaparral Fire Protection, Inc.,* No. 1:02-CV-171-J, 2005 U.S. Dist. LEXIS 43885 (D. Utah April 5, 2005) (dismissing plaintiff's FLSA "off the clock" overtime claim because plaintiff failed to meet his burden of proof in presenting "identifiable facts" to meaningfully support his "off the clock" claim); s*ee also Gilbert v. Old Ben Coal Corp.,* 407

N.E.2d 170, 175 (Ill. Ct. App. 1980) (affirming trial court decision in an FLSA case where the record was devoid of factual evidence such that the court had no basis for deciding that the employees' estimates of unpaid time were reasonable or creditable and stating that "[m]ere estimates of hours of work performed, without more, are not, one may infer, 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' as required by *Anderson v. Mt. Clemens Pottery Co.*")

## IV.    CONCLUSION

Crews bases her age discrimination claims almost exclusively on her allegation that on one occasion Ms. Hall said that she wanted "cute and perky" employees.  As explained in this Brief and as supported by substantial evidence, Crews voluntarily resigned her employment with Dolgencorp and had substantial and documented job performance problems that led to her legitimate, non-discriminatory demotion from Lead Clerk to Clerk.  Crews cannot satisfy even a *prima facie* showing of her age discrimination claim, and even if she could, the alleged "cute and perky" comment is wholly insufficient to establish pretext.

Crews' "guesses" as to the amount of unpaid overtime to which she claims she is entitled are insufficient to survive a motion for summary judgment.  As a result, based on the evidence submitted, and the applicable legal authorities, Dolgencorp is entitled to summary judgment on all claims.

WHEREFORE, PREMISES CONSIDERED, Dolgencorp respectfully requests that this Court enter an Order granting it summary judgment with respect to all claims asserted in Crews' Complaint.

Respectfully submitted,

s/Christopher W. Deering
Bar No.:  ASB-5555-I71C

Christopher W. Deering, Esq.
Ryan M. Aday, Esq.
**Ogletree, Deakins, Nash,**
**    Smoak & Stewart, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 328-1900
Facsimile:  (205) 328-6000
E-mail: christopher.deering@odnss.com
E-mail:  ryan.aday@odnss.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jere L. Beasley -- jere.beasley@beasleyallen.com

Wilson Daniel Miles, III -- dee.miles@beasleyallen.com

Roman Ashley Shaul  --  roman.shaul@beasleyallen.com

s/Christopher W. Deering
Christopher W. Deering
Bar Number:  DEE-006 / ASB-5555-I7IC
Attorney for Defendant,
Dolgencorp, Inc.

22