IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOY CREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. |
| | ) | 3:06-cv-0047-MEF-WC |
| DOLGENCORP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.   **INTRODUCTION**

On December 20, 2005, Plaintiff Joy Crews ("Plaintiff" or "Crews") filed this lawsuit against her former employer, Defendant Dolgencorp, Inc., ("Defendant" or "Dolgencorp"), alleging discrimination under the Alabama Age Discrimination in Employment Act ("AADEA"), § 25-1-20, Alabama Code, *as amended*, and a separate violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Defendant Dolgencorp, Inc. does business under the trade name "Dollar General" and operates over 7000 stores nationwide in what is commonly referred to as the "dollar store" market. Ms. Crews was in a management position in one of Defendant's stores located in Bowdon, Georgia and was later transferred and promoted to a higher management position in the Ranburne, Alabama store. Shortly after arriving at the new store in Alabama, Ms. Crews was demoted from any management level position because of her age and had her hours drastically reduced. Independently, while Ms. Crews was working in the Bowdon,

Georgia store, she routinely worked over 40 hours a week without receiving the proper overtime pay. Although the Defendant offers a pretext as a reason for Ms. Crews' demotion, they do not offer any evidence contradicting her statements that she routinely worked in excess of 40 hours without receiving proper overtime pay.

## II.   STATEMENT OF UNDISPUTED FACTS

1. Ms. Joy Crews was hired by Dolgencorp, Inc. on January 17, 2003 as a part-time store clerk, located in Bowdon, Georgia. (Crews depo. p. 10 lines 1-4).

2. At all times that Ms. Crews was employed by Dolgencorp, Inc. she was compensated on an hourly basis. (Crews depo. p. 30 lines 10-12).

3. Approximately two months after working in the Bowdon, GA store, Ms. Crews began to be routinely asked by her Store Manager ("SM") to work "off-the-clock" without overtime pay. (Crews depo. p. 119, lines 4-11).

4. Ms. Crews agreed to work off the clock because she did not want to lose her job or lose her insurance benefits. (Crews depo. p. 148, lines 18-20).

5. Ms. Crews was not aware that working off the clock was illegal because her SM was allowing her to work fewer hours the following weeks. For example, if Plaintiff worked 48 hours one week, she would only get paid for 40 hours that week. The following week she would only be required to work 32 hours, yet she would get paid for 40 hours. (Crews depo. p. 108, lines 21-22; p. 113, lines 10-11; p. 105, lines 14-21; p. 110, lines 12-21).

6. Ms. Crews' SM described the process as "banking hours." (Crews depo. p. 104, lines 19-20).

2

7. Other employees in the store worked "off-the-clock" in the same manner as Plaintiff. (Crews depo. p. 107 lines 16-17).

8. Ms. Crews worked other hours in which she was not paid because she would clock in prior to her scheduled shift to help customers. In those situations, the SM would edit the time to reflect her start time as being the assigned start time as opposed to when she actually worked. (Crews depo. pp. 52-53).

9. Plaintiff never received any overtime pay while employed by Defendant. (Crews depo. p. 147, lines 11-16).

10. Plaintiff believes she averaged working approximately 8 hours of unpaid overtime every other week during the two years she was employed in the Bowdon, Georgia store. (Crews depo. pp. 116-119).

11. Dolgencorp, Inc. has had several nationwide allegations of hourly employees being "worked-of-the-clock" in an attempt to stay within their strict budgetary constraints. (See Exhibit "A").

12. On May 10, 2003, Ms. Crews received a promotion to a store management position, from Clerk to Lead Clerk (also referred to as a third-key) at the Bowdon store. (Crews depo. p. 20, lines 17-23; p.21, lines. 2-12.)(*see also* Defendant's submission of the declaration of Norman Kennessey that confirms that the Lead Clerk position was a management position, ¶ 11).

8. On April 30, 2005, Ms. Crews' district manager approved her request to transfer from the Bowdon, Georgia store to a new store located in Ranburne, Alabama. (Crews depo. p. 66, lines 17-22).

9.  Ms. Crews transferred into the Ranburne, Georgia store as a Lead Clerk and was shortly thereafter told by the SM that she was promoted to the role of assistant store manager ("ASM"). (Crews depo. p. 30, lines 1-9).

10. However, shortly after her promotion, the acting SM told Ms. Crews that she wanted employees who were "cute and perky" and referenced a much younger employee. (Crews depo. p. 87, lines 8-23).

11. Soon after the SM's comment that she wanted someone who was "cute and perky," Ms. Crews was demoted from management, all the way back to a regular clerk, and had her hours drastically reduced. (Crews depo. p. 72, lines 13-18).

12. Ms. Crews was told she was demoted because of one incident dealing with a deposit slip and that the SM didn't have time to train her. (Crews depo., p. 75, lines 15-20; p. 83, lines 14-19).

13. Ms. Crews had her hours drastically cut back prior to any explanation offered for her demotion. (Crews depo. p. 73, lines 3-4).

14. The SM was the person who cut back her hours. (Crews depo. p. 103, lines 7-10).

15. Plaintiff was replaced as ASM and replaced as Lead Clerk by two individuals who were 20 and 21 years of age, respectively. (Crews depo., pp. 97-98).

16. Ms. Crews believes that her replacements first job with Dollar General was the management positions they were given. (Crews depo. p. 99, lines 10-13).

17. Neither of replacements is still employed by Defendant. (Crews depo. p. 99, line 21).

17. Ms. Crews resigned her employment because her hours were reduced. (Crews depo. p. 72, lines 13-17).

18. Plaintiff's hourly rate of pay was $7.25. (Crews depo. p. 51, lines 3-10).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment can only be entered on a claim if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(C).[1] In a FLSA case, once a plaintiff proves that the parties are subject to the purviews of the Act, the burden is on the defendant to prove that plaintiff is not entitled to overtime pay under the established regulatory scheme. See Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991).

### IV. ARGUMENT

A. **Ms. Crews has asserted a viable Fair Labor Standards Act claim.**

1. **Ms. Crews is owed overtime wages of one and on-half her hourly rate for all hours worked over 40 hours in any given week.**

Under the FLSA, since 1938, and hourly employee is entitled to an overtime rate of one and one-half their hourly rate for all hours worked over 40 in a given week. 29 U.S.C. §207. Appropriately, Defendant has not argued that there is an exception or exemption applicable to Plaintiff that would permit her to work more than 40 hours in a

---

[1] See Hendricks v. Baptist Health Services, 278 F.Supp.2d 1276 (M.D. Ala. 2003) for a thorough discussion of the summary judgment standard.

given week and not receive overtime pay for each hour over 40. In fact, Defendant's employment policies they offered as exhibits to Ms. Crews' deposition confirm as much.

Therefore, since Plaintiff's hourly rate was $7.25, she is entitled to $10.88 for every hour she worked over 40.

It is important to note that Defendant has not offered any evidence to controvert Plaintiff's sworn testimony that: 1) she was asked by her store manager to work off the clock, 2) that she did, in-fact, work off the clock without overtime pay for over a two year period, and , 3) that other individuals in her store worked off the clock without overtime pay.

2. **Ms. Crews' recollection of the hours she worked is sufficient since Defendant does not have adequate or accurate pay records to dispute.**

Defendant's single argument in defense of Ms. Crew's claim that she worked "off-the-clock" without overtime pay is that her calculation of damages is too imprecise for the Court to make a monetary award. Interestingly, they are not arguing that she is not owed any money. Regardless, the "imprecision" argument is without merit.

First, the FLSA imposes strict record keeping requirements on the Defendant. Every employer subject to the Act is required to record and maintain the hours their employees work each work day and the hours worked each work week. 29 C.F.R. §516.2 Despite their attempts, Defendant has primary responsibility for this requirement and cannot delegate it to its employees or other parties. Wirtz v. Mississippi Pubrs. Corp., 364 F.2d 603, 607 (5th Cir. 1966)("employers may not delegate this responsibility t the employees "so as to excuse the employer for any neglect or default.");Walling v. Sun

6

Pub'g Co., 47 F.Supp. 180 (W.D. Tenn. 1942)(employer is not relived of responsibility even where compliance is dependent on compliance by subordinates.)

Where an employer has inadequate pay records, the employee may make approximations. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). If the employee produces any evidence sufficient to establish a reasonable inference, and the employer fails to rebut that inference with evidence, the employer cannot complain the damages are imprecise or speculative since the inaccuracies stem from the employer's deficient records. Id. at 688; Brock v. Norman's Country Market, 835 F.2d. 823, 828 (11th Cir.). "Employee records maybe and frequently are untrustworthy." Anderson v. Mt. Clemens, 328 U.S. at 687. However, barring the introduction by the employer of evidence that seriously challenges the fairness and reasonableness of the assumptions underlying the plaintiff's evidence from which the approximation of back pay can be inferred, or proving a more plausible or accurate alternative calculation, the plaintiffs approximation will stand. Id. at 687-688. A district court's insistence on establishment of precise damages can be reversible error. Mitchell v. Mitchell Truck Line, 286 F.2d 721, 726 (5th Cir. 1961).

In the present case, the Ms. Crews was specific in detailing the reasons and type of occasions she worked "off-the-clock." (Crews depo. p. 105, lines 14-21; p.110, lines 12-21). Ms. Crews also gave her best and most reasonable estimate, over the entire two-year period, of the amount of hours she worked overtime "every-other-week." (Crews depo. p. 116, lines 20-23; p. 119, lines 4-11). Ms. Crews even explained in detail the "banking of hours" policy her store manager utilized. (Crews depo. p. 106, lines 3-8; p.111, lines 6-9). In contrast, and perhaps more importantly, the Defendant has not

attempted to offer any "evidence" that Ms. Crews' explanation is unreasonable or even false. Therefore, there is no need to question Ms. Crew's assessment.

Despite Defendant's attempt, under the FLSA, it is not a legitimate defense or argument that they depended on the Plaintiff to accurately record her time. This is especially true when they allow the store manager to have the capability and access to the record-keeping system and manipulate the true time. Because Defendant has not offered any evidence establishing that no genuine issue of material fact exits on Plaintiffs FLSA "off-the-clock" claim, summary judgment should be denied.

### B. Plaintiff has asserted a viable Age Discrimination claim.

Contrary to Defendant's characterization, Ms. Crews' claim of age discrimination is for a claim of failure to promote (and the corresponding demotion she received) and it is not based upon her termination.[2] In an action alleging disparate treatment under the ADEA and/or AADEA, a plaintiff may prove intentional discriminatory motive by presenting either direct, circumstantial or statistical evidence of age discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Corbin v. Southland Int'l Trucks, 25 F.3d 1545, 1548 (11th Cir. 1994). In establishing a *prima facie* case of discrimination in failure to promote/hire, Plaintiff must provide evidence supporting the following four elements: (1) Plaintiff was a member of a protected class; (2) Plaintiff was actually qualified for and applied for the position sought; (3) Plaintiff was rejected for the promotion/hiring; and (4) the position was filled by someone outside the protected class

---

[2] Defendant's argument that a viable claim of age discrimination can only arise in the context of a termination is in direct conflict will the applicable law and the plain text of the statute. *See generally* § 25-1-22(1), Alabama Code, *as amended*.

8

who was equally or less qualified for the position than Plaintiff. Standard v. A.B.E.L. Servs., Inc, 161 F.3d 1318, 1333 (11th Cir. 1998); Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994).

Ms. Crews has established a *prima facie* claim of age discrimination in a failure to promote (and her corresponding demotion). Defendant concedes Ms. Crews was over the age of 40 when she was first hired as a clerk. (*Defs. Undisputed Facts,* ¶ 1). Ms. Crews was qualified for the position because she had worked for the company for over two years, had been given keys to the store, and had been promoted to two different management level positions – both Lead Clerk and ASM. (Crews depo. p. 119, lines 4-11; pp. 34, 36, 37; p. 76, line 7). Ms. Crews was demoted down two levels, completely out of management, and had her hours cut almost in half. (Crews depo. p. 72, lines 13-18). She was demoted and cut back to a level that did not allow her to sustain a living or maintain her health insurance. (Crews depo. p. 72, lines 13-17). Ms. Crews was replaced by two younger adults that were in their early twenties and who did not have previous experience with Dollar General. (pp. 97-99). Thus, Plaintiff has established her *prima facie* claim of age discrimination.

In response, Defendants' claim that they had a legitimate, non-discriminatory reason for demoting Plaintiff and/or not promoting her. Specifically, they claim that Ms. Crews had been a substandard employee who had been warned of her behavior. Defendants' further explain that Ms. Crews was told the reason for her demotion at a meeting with her district manager and that *it was the district manager* that demoted her.

Under the burden shifting analysis for proving a claim of discrimination through circumstantial evidence, Plaintiff must show a pretext - which the reason given by the

employer is false and the real reason for the adverse treatment is discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This pretext can be shown by Plaintiff.

First, Ms. Crews store manager exhibited open animosity toward her when she stated that she wanted employees that were "cute and perky" and specifically referenced a much younger person as an illustration of her comment. (Crews depo. p. 87, lines 8-23). There is no evidence refuting this statement was made. Similarly, it was after this comment, and before the alleged meeting with her district manager, that Ms. Crews began to experience hostility from her store manager in the form of cut backs to her hours. (Crews depo. p. 73, lines 3-4). Therefore, contrary to Defendant's story, the district manager's decision was a subsequent act to the discrimination, or at the very least, an additional act. Id.

Additionally, under 11th Circuit precedent, a plaintiff in a discrimination case can establish pretext by showing a disparity between a plaintiff and a comparator so great that a reasonable fact-finder could infer that the employer did not believe the comparator was more qualified. Cofield v. Goldkist, Inc., 267 F. 3d 1264, 1268 (11th Cir. 2001)(*quoting*, Denney v. City of Albany, 247 F. 3d 1172, 1187 (11th Cir. 2001)).

In the present case, Ms. Crews had been working for the company for over two years. As part of her job she opened and closed the store, handled money, went to the bank and had keys to the store. (Crews depo. p. 32, lines 18-21; p. 34, lines 12-19; p. 37; p. 36, lines 16-21). In contrast, the individuals who replaced her were 20 and 21 years of age and had just begun to work for Defendants. (pp. 97-99). In fact, the evidence before the court is that the individuals that replaced Ms. Crews did not even stay employed with

Defendants for very long after their hire. Id. Accordingly, a genuine issue of material fact exists because a fact-finder could reasonably believe that the experience level between the comparators is so great that discrimination was the actual cause of the demotion and cut back of hours.

## IV. CONCLUSION

Because a genuine issue of material fact exists as to each claim asserted by Plaintiff, summary judgment should be denied.

/s/ Roman A. Shaul

ROMAN A. SHAUL (ASB#5043-S58R)
One of the Attorneys for Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone No. (334) 269-2343
Facsimile No. (334) 954-7555

# CERTIFICATE OF SERVICE

      This is to certify that I have electronically filed the foregoing document with this Court with copies to be served upon all Defendants of record <u>as listed below</u> by placing a copy of same in the United States Mail, first class, postage prepaid and/or by this Court's electronic filing system, on this the 1st day of December, 2006.

Mr. Christopher W. Deering  
Mr. Ryan M. Aday  
**OGLETREE, DEAKINS, NASH,**  
**SMOAK & STEWART, P.C.**  
One Federal Plaza, 10th Floor  
1819 5th Avenue North  
Birmingham, Alabama  35203

                                            /s/ Roman A. Shaul

                                            OF COUNSEL